MINUTE ENTRY
ROBY, M. J.
April 22, 2009

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALVIN SMITH, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3954** |
| **DIAMOND OFFSHORE COMPANY, ET AL.** | **SECTION: "B" (4)** |

## ORDER

Before the Court is a **Motion To Compel Independent Medical Examination and for Sanctions (R. Doc. 126)**, filed by the Defendants, Diamond Offshore Management Company and Diamond Offshore Company (collectively, "Diamond"), seeking an Order compelling Plaintiff, Alvin Smith ("Smith"), to appear for an independent medical examination ("IME") by psychiatrist Dr. John W. Thompson, Jr. ("Thompson") and for sanctions in the form of attorneys fees and costs for having to file this motion. Smith opposes the motion. (R. Doc. 128). The motion was heard with oral argument on Wednesday, April 22, 2009.

### I.   Background

Smith filed this action pursuant to the Jones Act, 46 U.S.C. § 30104, based on injuries he sustained during the course of his duties aboard Diamond's sea vessel. (R. Doc. 1., Compl.) Smith

MJSTAR:  00:05

was a seaman and member of the crew assigned to work on the Ocean Baroness–a drilling vessel owned and operated by Diamond. (R. Doc. 1, VI.)

On or about March 10, 2007, Smith was performing his usual duties aboard the Ocean Baroness, at which time he was severely injured. (R. Doc. 1, VII.) Smith alleges that his injuries resulted from a defect or vice in the condition of the vessel, its equipment, and/or the negligence of Diamond, its agents, representatives, or employees. (R. Doc. 1. VII.) Accordingly, Smith seeks damages including: medical expenses; loss of earnings and impaired earning capacity; physical pain and suffering; mental anguish and emotional trauma; disability; scarring and disfigurement; and loss of enjoyment of life. (R. Doc. 1, IX.) Smith's wife, Kanethia Smith, and his minor children, Latoya Smith and Keosha Smith, assert additional claims for loss of consortium, including society, services, and intimate relations. (R. Doc. 1, X.)

During the course of the litigation, on October 21, 2008, Smith's treating neurologist, Dr. Leopoldo deAlvare ("deAlvare") recommended that Smith visit Dr. F. T. Friedberg ("Friedberg") to receive counseling for his depression. (R. Doc. 126-3, p. 1, Ex. A., Note of Leo A. deAlvare, M.D., Oct 21, 2008.) On November 10, 2008, counsel for Smith wrote to counsel for Diamond inquiring about whether Diamond would agree to pay for the psychiatric evaluation and treatment. (R. Doc. 126-3, Ex. B., Ltr. From David L. Bateman, Nov. 10, 2008.) Counsel for Diamond responded via email, indicating that he had not yet seen any psychiatric records reflecting depression and/or Smith's need to see a psychiatrist. Counsel for Diamond further informed counsel for Smith that he would "likely want an IME by a doctor of [Diamond's] choosing" in the event that Smith decided to make his depression or psychiatric state an issue in this case.[1] (*See* R. Doc. 126-3, p. 3,

---

[1] Thereafter, on November 14, 2008, counsel for Smith forwarded counsel for Diamond Dr. deAlvare's note.

Ex. C., Email from Richard Chopin, Nov. 10, 2008.)

Counsel for Diamond sent a follow-up email on November 17, 2008 regarding his "second request" for an IME–which purportedly was faxed to counsel for Smith on November 11, 2008.[2] (*See* R. Doc. 126-3, p. 5, Ex. E., Email from Richard Chopin, Nov. 17, 2008.) In the email, counsel for Diamond reiterated his desire to permit Dr. John W. Thompson, Jr.–Director of Forensic Neuropsychiatry and Vice Chairman of the Department of Psychiatry and Neurology at Tulane University School of Medicine–to conduct Smith's IME.

On November 20, 2008, counsel for Smith sent a letter to counsel for Diamond indicating that Smith was scheduled to see Dr. Friedberg and noting that Friedberg "may be called to provide expert testimony at trial." (R. Doc. 126-3, p. 7, Ex. F, Ltr. From David L. Bateman, Nov. 20, 2008.) Counsel for Smith also assured counsel for Diamond that he would forward copies of Smith's medical records from Friedberg "[a]s soon as they became available."[3]

Dr. Friedberg conducted his psychiatric examination of Smith on December 22, 2008. (*See* R. Doc. 126-4, pp. 2-4, Psychological Report of Dr. Friedberg.) Counsel for Smith filed his Witness List and Exhibit list that same day; however he neglected to include Dr. Friedberg as a potential witness. (*Compare* R. Docs. 78, 79 *with* R. Doc. 126-3, p. 8, Ex. G., Ltr. From David L. Bateman, Dec. 23, 2008.) He followed up by sending counsel for Diamond a letter correcting this omission. Smith later included Dr. Friedberg as a potential witness on the Pre-Trial Order. (*See* R. Doc. 111.)

On January 8, 2009, counsel for Diamond sent another email, this time openly expressing

---

[2] Diamond asserts that the November 10, 2008 email constitutes its first request for an IME. As to the formal request for an IME sent on November 11, 2008, the undersigned notes that neither party attached a copy of this letter for the Court's review.

[3] According to Diamond, these reports were not received until March 11, 2009 – in response to a subpoena.

his objection to the use of Dr. Friedberg as a witness, primarily due to counsel for Smith's repeated refusal to permit Diamond to conduct Smith's IME with Dr. Thompson. (R. Doc. 126-3, p. 9, Ex. H, Ltr. From Richard A. Chopin, Jan. 8, 2009.) Finally, on March 5, 2009, counsel for Diamond made his final request to counsel for Smith, asking him to produce Smith for the IME with Dr. Thompson. (R. Doc. 126-4, Ex. L, Email from Richard Chopin, Mar. 5, 2009.) Counsel for Smith responded on March 14, 2009, stating his position that "good cause" does not exist for the requested IME. (R. Doc. 126-4, p. 16, Ex. M., Email from David L. Bateman.) Thereafter, on March 31, 2009, Diamond filed the instant motion seeking to compel Smith to submit to an IME on the ground that good cause exists since Smith has clearly placed his mental condition in controversy. Diamond also seeks sanctions in the form of attorney's fees for having to file the motion in the first place.

Smith opposes the motion, arguing that Diamond lacks good cause for the IME, namely because his mental injury "*will be an issue but not* a significant portion of [Smith's] injuries." (R. Doc. 128, p. 3) (emphasis in original). Smith further asserts that: (1) he does not intend to call Dr. Friedberg at trial; and (2) he does not intend to introduce Dr. Friedberg's records or reports as evidence. Smith also points out that his treating neurologist–Dr. deAlvare–was the one who recommended that he see Dr. Friedberg and emphasizes that he already has provided Diamond with all of Dr. deAlvare's records. Smith explains that he merely listed Dr. Friedberg as a witness out of an abundance of caution, but has since decided that he will not call him to the stand. Smith notes, however, that he will reconsider this position in the event that the Court grants the subject motion to compel Smith's IME.

**II.      Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."

4

FED.R.CIV.P. 26(b)(1). The Rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 35, a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. FED.R.CIV.P. 35(a). The court may issue such an order "on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." *Id.* Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964).

"Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. at 119.

## III. Analysis

### A. Independent Medical Examination

Diamond contends that there is good cause for Smith to be compelled to submit to an IME with Dr. Thompson, because Smith has placed his mental condition at issue by alleging mental pain and emotional trauma in his Complaint. It further argues that Smith has submitted himself to the personal observations and care of Drs. DeAlvare and Friedberg; that he has listed their records/bills as exhibits; and that both doctors are listed as potential witnesses to be called at trial. Diamond also emphasizes that Smith has requested that it pay for his psychiatric treatment. It notes that, as Smith's Jones Act employer, Diamond is entitled to investigate his claims for payment and any associated damages. Ultimately, Diamond argues that it would suffer "substantial hardship" and may be subject to the risk of juror bias in favor of Smith if the motion is denied.

Smith contends that he should not be compelled to attend an IME with Dr. Thompson, because he no longer plans to call Dr. Friedberg as a witness at trial. He also claims that he does not intend to introduce Dr. Friedberg's reports or records at trial. Rather, Smith insists that he only included Dr. Friedberg on the witness list out of an abundance of caution. Smith concedes that he plans to use the testimony and records of Dr. deAlvare–Smith's neurologist–at trial. However, he argues that Diamond already has been provided with all of Dr. deAlvare's records and that Diamond has had the opportunity to depose Dr. DeAlvare and Smith, respectively. Therefore, Smith argues that Diamond has failed to demonstrate good cause for the examination. Accordingly, he urges the Court to deny the motion.

Here, the Court examines the facts in conjunction with the law to ascertain whether an IME is appropriate in this matter. The Court first notes that Smith's mental state is in controversy, as he contends that he has suffered mental anguish and emotional trauma as a result of the vessel accident.

The Court is of the opinion that Diamond has shown good cause for why Smith should submit to an IME, because Diamond seeks to test the conclusions reached by Friedberg, Smith's psychiatrist, regarding Smith's depressed state. Furthermore, the Court remains unconvinced by counsel for Smith's assurances that he does not "intend" to call Dr. Friedberg at trial, particularly because counsel would be well within his right to call Friedberg since he is listed as potential witness in the Pre-Trial Order.

During the hearing, the undersigned asked counsel whether Smith intends to withdraw his claim for damages for mental anguish and emotional trauma as set forth in his Complaint. Counsel indicated that Smith has no plans to withdraw these claims. Based on the foregoing, the Court finds that an examination of Smith's mental and emotional condition is necessary to determine the existence and extent of the alleged injuries. Therefore, Diamond's motion to compel an IME is granted, and Smith is ordered to appear in New Orleans, Louisiana for a medical examination with Dr. John W. Thompson, Jr.

### B. Attorney's Fees and Costs

Diamond also requests the award of attorney's fees and costs based upon the conduct described herein. In light of the circumstances, the Court agrees that an award of fees is appropriate here. Accordingly, Diamond's request for attorney's fees and costs is granted.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Diamond Offshore Management Company and Diamond Offshore Company's **Motion To Compel Independent Medical Examination and for Sanctions (R. Doc. 126)** is hereby **GRANTED.** Alvin Smith is ordered to appear in New Orleans, Louisiana for a medical examination with Dr. John W. Thompson, Jr. Diamond also is awarded the fees and costs

incurred in bringing the motion.

**IT IS FURTHER ORDERED** that Diamond shall file a motion to fix attorney's fees into the record by **Wednesday, April 29, 2009**, along with: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill, and reputation and; (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than **Wednesday, May 6, 2009.** Diamond shall notice the motion to fix attorney's fees for hearing on **Wednesday, May 13, 2009** and the motion shall be heard on that date **without oral argument**.

New Orleans, Louisiana, this 22nd day of April 2009

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**